```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   JULIO REDWOOD & EDUARDO
     REDWOOD, on behalf of
 4   themselves and all others
     similarly situated,
 5
                    Plaintiffs,
 6
              v.                              16 Civ. 3502 (AJN)
 7
     CASSWAY CONTRACTING CORP.; JS
 8   & JR CONSTRUCTION CORP.; JAMES
     CASSIDY; JOSE LUIS SUAREZ; and
 9   JACKSON RAMONE,

10                  Defendants.

11   ------------------------------x
                                             New York, N.Y.
12                                           November 4, 2016
                                             10:55 a.m.
13
     Before:
14
                         HON. ALISON J. NATHAN,
15
                                             District Judge
16
                              APPEARANCES
17
     JOSEPH, HERZFELD, HESTER, & KIRSCHENBAUM
18        Attorneys for Plaintiffs
     BY:  DENISE A. SCHULMAN
19        LUCAS C. BUZZARD

20   RIVKIN RADLER LLP
          Attorneys for Defendants Cassway Contracting Corp.
21        and James Cassidy
     BY:  SCOTT R. GREEN
22
     MICHAEL K. CHONG
23        Attorney for Defendants JS & JR Construction Corp.,
          Jose Luiz Suarez, and Jackson Ramone
24

25
```

1        (Case called)

2        MR. SCHULMAN:  Denise Schulman and Lucas Buzzard for

3    plaintiffs.

4        MR. CHONG:  Michael Chong for defendant JS & JR

5    Construction Corp., Jose Suarez, and Jackson Ramone.

6        MR. GREEN:  Good morning, your Honor, Scott Green on

7    behalf of Cassway Contracting Corp. and James Cassidy.

8        I called this conference after receiving a series of

9    unusual letters pertaining to a potential settlement of this

10   FLSA matter which of course requires the Court's approval for

11   fair and reasonableness.  But in the course of being informed

12   as to that, I have indications and evidence that suggests the

13   possibility that this purported settlement was reached --

14   certainly everyone agrees it was reached without the presence

15   of plaintiffs' attorneys and there have been allegations that

16   Mr. Chong engaged in ethical violations, including

17   communicating with a known represented party and then also some

18   questions as to his, Mr. Chong's bar membership and the like.

19   Certainly troubling issues.

20       I think the first question is procedurally how to

21   proceed.  The immediate legal question is whether there is an

22   enforceable settlement here, if there is an enforceable

23   settlement, whether or not it's fair and reasonable such that

24   the Court would approve it.  Plaintiffs have put in sworn

25   declarations from plaintiffs indicating, among other things,

1    that they didn't understand the settlement.  I have no contrary

2    evidence to that.  I am not sure what that would look like.

3         Plaintiffs' counsel wasn't present at the settlement.

4    I have no basis to determine whether this is a fair and

5    reasonable settlement, but certainly if there is evidence,

6    uncontradicted evidence that unrepresented plaintiffs didn't

7    understand the terms of the settlement, I can assure you I

8    won't be approving it.

9         I'm open to hearing any suggestions as to procedurally

10   how to proceed.

11        I suppose I should take as a starting point the

12   question, Mr. Chong, of whether you are admitted to the

13   Southern District of New York.  I see that.

14        MR. CHONG:  I brought a copy of my certificate and

15   plaintiffs' counsel could have simply contacted the clerk's

16   office.

17        THE COURT:  I guess their suggestion -- I don't know

18   what their suggestion is.  You're admitted to the Southern

19   District of New York.

20        MR. CHONG:  Yes, your Honor.

21        THE COURT:  To be admitted to the Southern District of

22   New York you need to be admitted.

23        MR. CHONG:  Underlying states such as New York or

24   Connecticut.  I waived into the Eastern District and then I

25   waived into the Southern District 13 years ago, 2003.

 1             THE COURT:  When you applied to the Southern District

 2    of New York it was via your Eastern District of New York.

 3             MR. CHONG:  Correct.

 4             THE COURT:  And your Eastern District of New York.

 5             MR. CHONG:  I waived it through my admission in New

 6    Jersey federal court, which is procedurally correct.

 7             THE COURT:  I will look at that.  I don't have any

 8    reason to believe that that's not the case with respect to the

 9    Eastern District of New York.  As we sit here you're a member

10    of the Southern District of New York.  That's clear.  You have

11    made a notice of appearance in the case.  Unless something else

12    emerges, you are here appropriately.

13             Let me hear from plaintiffs as to the suggestion as to

14    how to proceed.

15             MR. SCHULMAN:  I think the purported settlement should

16    be rejected out of hand.  As you said, there is no evidence to

17    contradict what the plaintiffs said about their lack of

18    understanding of the document.  It was obviously obtained in an

19    unusual manner, particularly for an FLSA case, and there is

20    certainly no showing that the dollar amount is reasonable.  I

21    see no basis for approving it as fair.

22             THE COURT:  So the plaintiffs' suggestion is based on

23    the written record before me I should set aside the question of

24    whether it's an enforceable settlement and just conclude it's

25    not fair and reasonable?

1          MR. SCHULMAN:  Yeah.  I think there is certainly

2     enough --

3          THE COURT:  Then we are on schedule for the case.

4          MR. SCHULMAN:  We will just move forward.

5          THE COURT:  Mr. Chong.

6          MR. CHONG:  I could certainly submit affidavits from

7     my client saying that they have met with, as indicated in my

8     papers that I submitted, they properly met with the plaintiffs.

9     They discussed a settlement with the plaintiffs and they

10    executed the settlement agreement which I attached to my

11    submissions.

12         THE COURT:  Mr. Chong, you are prepared to put what

13    you put in your letter as to your own involvement in the

14    settlement discussions?

15         MR. CHONG:  Yes, your Honor.

16         THE COURT:  In a sworn declaration or come up here and

17    testify under oath?

18         MR. CHONG:  I can certainly testify under oath here

19    right now.  All the facts provided in my letter are correct.  I

20    never engaged in any direct discussions with the plaintiffs.

21    That's clear.  That's provided in my letter and I attest to

22    that.

23         THE COURT:  You said you could do all that.  Is that

24    what you are proposing, that we have a hearing on that?

25         MR. CHONG:  On which issue, your Honor?

1    THE COURT:  There are two issues.  I think the way to

2    think of it is, there are two issues.  Is there an enforceable

3    settlement which there would not be, for example, if you

4    participated without claims counsel present, if there were a

5    language barrier that precluded a knowing agreement to enter

6    into this and the like.  There is evidence in the record which

7    shows those things.  There is no contrary evidence in the

8    record.

9    I think what you are saying is, one possibility is we

10    could have a hearing and we could call witnesses and there

11    could be cross-examination to establish all of those facts.

12    Even if we get past that hurdle, there is the question

13    of whether this settlement counts as fair and reasonable under

14    *Cheeks* and the like.  It's a whole other set of evidence that

15    we have --

16    MR. CHONG:  I agree with that procedure, your Honor.

17    It's my understanding in speaking with my clients -- my clients

18    speak Spanish.  It's a very small company.  JS&JR and the two

19    individual defendants, they do dry wall contracting and the

20    plaintiffs had worked for them.

21    After the lawsuit was filed, it's my understanding

22    they reached out to him and said, why are you suing us and they

23    wanted to work on some type of settlement.  They did that.  I

24    have no knowledge of that until I received this document.  My

25    client said they were able to work out a settlement.  They sent

1    this document to me which is attached to document 29-1.  It

2    says:  Letter agreement and settlement.

3         Upon receiving this I immediately sent it to

4    plaintiffs' counsel and advised them I received this document

5    from my clients.  It appears that there is some type of

6    settlement.  Plaintiffs' counsel vehemently objected via

7    e-mail, saying that this is not a valid settlement agreement.

8    They will not accept 15,000.

9         My concern is that they did sign this agreement.  My

10   clients advised me they do speak Spanish and they communicated

11   this settlement to the plaintiffs and it was acknowledged.

12   It's notarized.

13        THE COURT:  Was it provided in Spanish translation?

14        MR. CHONG:  This is the document that I was given from

15   my clients.

16        THE COURT:  You are not aware of any Spanish

17   translation?

18        MR. CHONG:  I'm not aware, but I did ask my clients.

19   Spanish is the primary language of my clients.  And so they

20   advised me that they did communicate this to the plaintiffs.

21        But I believe it's fair, your Honor, to have such a

22   hearing, to vet out whether they understood what they were

23   signing, whether they agreed to this 15,000 dollar settlement

24   or not.

25        It seems to be a fair settlement in light of the fact

1    JS&JR is not some huge contracting company with millions of

2    dollars.  It's a small two-man operation that gets by getting

3    miscellaneous contracts here and there because of dry walling.

4         I understand plaintiff counsel's position.  They want

5    to litigate the case.  This is fee shifting.  There is much

6    more benefit to them to have the case continue.

7         I suggested to plaintiffs' counsel that in addition to

8    the settlement agreement we could formally memorialize it.

9    They could submit a fee application and the matter will be

10   resolved.

11        THE COURT:  That sounds like engaging in

12   counsel-to-counsel settlement discussions, which would be fine.

13   I would certainly be happy to see that proceed.  I have deep

14   concerns or I have declarations -- just looking back again, the

15   testimony here:  I cannot read English.  No one read the

16   document to me in Spanish before I signed it.  I didn't know

17   when I signed it.  When I signed the document, I did not want

18   to drop the lawsuit.  I did not think that I was agreeing to

19   drop the lawsuit.

20        Are you saying that's perjury and I would have to

21   conclude that's perjury for you to prevail?

22        MR. CHONG:  I understand that.  According to my

23   clients, I grilled them on this upon receiving this.  I said,

24   explain to me what happened.  How did you get this agreement?

25   And they explained to me that they met on their own accord with

1   the plaintiff on their own reaching out to them, and they sat

2   down.   They negotiated the settlement.   They executed and then

3   they went out to have it notarized.   That sounds like a

4   settlement and meeting of the minds to me.   In regards to

5   this --

6        THE COURT:   Not if what the plaintiffs have put in

7   that declaration is true.

8        MR. CHONG:   Respectfully, your Honor, I question that.

9   It seems very convenient -- the affidavits that they submitted

10  are very sophisticated --

11       THE COURT:   Mr. Chong, to be clear, what you are

12  asking me, you are asking me to look at the context and

13  conclude that these declarations are perjury.   There is no

14  other way I can get to agreeing that this is a meeting of the

15  minds.

16       MR. CHONG:   I understand that, your Honor.

17       THE COURT:   You want a full-blown hearing on that.

18  That's what you are asking for?

19       MR. CHONG:   In light of this, I think it might be

20  appropriate because my clients advised me that that was what

21  occurred.

22       THE COURT:   Therefore what?   I apologize, Mr. Green.

23  You have not been given a chance.   Go ahead.

24       MR. GREEN:   Thank you, your Honor.   I represent the

25  alleged joint employer here.   I want to be candid with the

1    Court in stating that it is in our vested interest to see a

2    settlement here.  My client is going to potentially be engaged

3    in extended litigation over the sole issue of joint employer.

4    We think it would be terrific if there was a settlement today.

5          I want to make a few observations about the

6    submissions that I see.  My client nor I have no direct

7    knowledge of this.  We see some things here that I think lend a

8    lot of merit to the suggestion of viewing this sort of in two

9    parts.  Number one, was there an agreement here and, number

10   two, if we can resolve was there an agreement and was it fair

11   and reasonable under *Cheeks*.

12         I want to note first that one of the affidavits states

13   that the affiant does not read or speak English.  The other

14   does not.  The declaration of Julio Redwood does not state

15   that.  I would take that to mean that he does understand --

16         THE COURT:  I am going to stop you counsel.  The kind

17   of arguments that you are making are perfectly available if we

18   go down the road of having a full hearing on the question of

19   the enforceability.  I don't mean to cut you off.  If that's

20   what we are doing, I'll set aside a morning or an afternoon,

21   witnesses will be here, opportunity for cross-examination,

22   opportunity to provide additional testimony and the like and

23   submit documentary evidence.  If that's the request, I'll

24   consider it.

25         MR. GREEN:  Thank you.  My only commentary there would

 1    be to identify the reasons why I feel that a hearing of that

 2    nature would actually have merit.  And from reading the

 3    affidavits from the plaintiffs, I actually see a number of

 4    points here that would raise to me that that kind of hearing

 5    would have a lot of merit.  And I think the conclusion might

 6    very well be, despite their statements that there was no

 7    agreement here, I think there are a lot of facts in these

 8    affidavits that shows there actually was an agreement, the

 9    timing of how this unfolded being critical.  This meeting took

10    place in August and there were some kind of talks.

11            Obviously, it's alleged that Mr. Chong was present.  I

12    don't know if he was or he wasn't.  These agreements don't get

13    signed until weeks later.  I find it very curious that in that

14    interim period there is absolutely no discussion with

15    plaintiffs' counsel by either of these two individuals and then

16    later they come back and they sign and notarize this document.

17            I have seen terrible behavior, your Honor, in these

18    types of cases and sort of behavior that I see where you have

19    these back-channel settlements where you have an attorney or an

20    employer that threatens reporting people to immigration or

21    threat of criminal prosecution.

22            I see none of those kind of facts here.  I see a sort

23    of cordial conversation where my clients are good guys.  I

24    think this case should go away.  We don't have a whole --

25            THE COURT:  Did your clients tell you about this

1   settlement discussion?

2          MR. GREEN:  No.  I knew nothing about it until the

3   Court did.  I'm just reading --

4          THE COURT:  Why wasn't that unusual?  You said it was

5   unusual that the plaintiffs -- that there is this gap.

6          MR. GREEN:  I can tell you, I think I understand why

7   my clients were involved in these discussions, and that is

8   because JS&JR are fully indemnified contractually with my

9   client for everything.  They are not honoring it.  That's why

10  I'm cross-claiming.  In my view, I don't think they have much

11  of a defense there.  Why wouldn't they go out and try to come

12  up with some kind of resolution.  I think our cross-claims are

13  strong and I think we are going to assert them throughout this.

14         THE COURT:  I'm not trying to get into your

15  communications, but it's unusual that your clients would engage

16  in this and not talk to you, no?

17         MR. GREEN:  My clients didn't engage in anything, your

18  Honor.  I'm sorry if I caused any confusion.  My clients were

19  not part of this discussion in any way, shape, or form.  We

20  were not present or advised.

21         THE COURT:  How does this settlement affect your

22  client?

23         MR. GREEN:  We would like this case to be over, your

24  Honor.

25         THE COURT:  You are not bound by the settlement?

 1              MR. GREEN:  We would not be bound by the settlement,

 2    your Honor, but I think by virtue of the fact that JS&JR has

 3    indemnified my client, I think this is a full settlement of all

 4    claims and that this case could be over with this agreement.

 5    We would withdraw our cross-claims with prejudice against JS&JR

 6    if the settlement is approved by the Court.

 7              THE COURT:  Thank you.

 8              Mr. Chong, I couldn't tell if you were about to

 9    withdraw your suggestion for a hearing.  Is that what the

10    request is, that we are going to do a full-blown evidentiary

11    hearing with witnesses, evidence, and cross-examination, which

12    is going, I think, to require testimony from you in some way.

13    I have to sort out how to do that.  I am not sure if --

14              MR. CHONG:  I don't want the burden the Court,

15    obviously.  My goal is stepping back and see if we could

16    resolve it in an efficient manner.  When I received it, I sent

17    it to plaintiffs' counsel and said, it appears we have a

18    settlement.  I was hoping that they would agree with me and we

19    could join in the procedure to get the matter wrapped up.  I

20    don't want to burden your Honor with this type of hearing, but

21    it seems, based on my client's representations, that it might

22    be necessary.

23              THE COURT:  Ms. Schulman.

24              MR. SCHULMAN:  It's hard to imagine an outcome from a

25    hearing that would result in much more than my client saying

1    this is how it happened and Mr. Chong's client saying, that is

2    how it happened.

3         THE COURT:  I would like to think that someone won't

4    lie and everyone knowing -- I take that very seriously.  The

5    consequences here will be severe if someone comes and commits

6    perjury in my courtroom.

7         MR. SCHULMAN:  I certainly don't think that

8    Mr. Chong's clients are equipped to testify about my client's

9    understanding of what it meant when they signed the document.

10        THE COURT:  You can't get out of an agreement -- they

11   could testify that they translated it into Spanish for them

12   orally, that they said things that indicated that they

13   understood that this meant that the case goes away, things that

14   contradict -- I don't know if they can or not, but you can't

15   simply get out of a contractual agreement by claiming not to

16   understand it, claiming that alone.  Maybe they did understand

17   that and, if I come to that conclusion, a basis for not

18   enforcing it.  But as you know, you can't simply get out of a

19   contract by claiming you didn't understand it.  That's not

20   enough.

21        MR. SCHULMAN:  Sure.  But I think the fact that

22   attorneys were not involved in this process may have been the

23   source of most of this conclusion.  That way people may not

24   express themselves as clearly --

25        THE COURT:  That may be true, but, again, unless you

1    are aware of authority that says FLSA settlements have to be

2    negotiated by counsel, which I'm not aware of --

3          MR. SCHULMAN:  I did cite an Eleventh Circuit case

4    that had very similar circumstances where the parties had

5    individually reached some settlement and then that's when the

6    defendant sought to enforce that settlement, plaintiffs'

7    attorney objected, and the Eleventh Circuit said under these

8    circumstances it can't be enforced.

9          THE COURT:  I saw that authority.  It's not binding

10   precedent.  I'm not sure what relevant precedent would tell me

11   here.  I'm not certain if I think that's the right rule or not.

12   We would have to get to that question.  I have enforced FLSA

13   settlements in which one party is representing themself.

14         MR. SCHULMAN:  If it's a fair settlement.

15         THE COURT:  That's the point.  That's the question.  I

16   don't have in front of me anything that it would be or not.

17   Before we get to that I think is the question of whether it's

18   an enforceable agreement.  And then if it's an enforceable

19   agreement, I would have to determine, like any other settlement

20   put in front of me, whether it's fair and reasonable.  That's

21   going to require a whole host of further determinations.

22         If that's where we are, I'm happy to do it.  I'm not

23   happy do it.  I'm frankly deeply disturbed by this whole thing.

24   And if we get to the point of a hearing, I can assure you that

25   we will find the truth.  I have to make a determination as to

1    what's the truth, and the consequences for anyone who commits

2    perjury will be severe.

3         I am going to propose that you take some time to

4    discuss whether there is some agreement that can be reached or

5    an agreement to proceed with the litigation if there is no

6    settlement.  Come to some settlement with everybody

7    understanding, your clients fully understanding what their

8    rights are, what they are giving up, what they are getting.

9    See if you can come to some agreement that would pass as fair

10   and reasonable under *Cheeks*.  That's one option.

11        Another option is to agree, there is no agreement,

12   there is not an interest at this point, we are proceeding with

13   litigation.

14        And then the third option is to go the full-blown

15   hearing route to determine whether this is an enforceable

16   agreement and whether it's fair and reasonable.  I have doubts

17   about being able to reach a conclusion here that it's an

18   enforceable agreement and fair and reasonable.  I don't know.

19   I just don't have enough in front of me at this time, so I'm

20   not predetermining.

21        My proposal is for counsel to engage in a discussion

22   either on your own or with a neutral mediator, like the

23   magistrate judge assisting you and your clients, see which of

24   those options make sense.  And only if we get to the need for

25   option No. 3, then you can write proposals to me as to what

1    that hearing would look like, what law would apply, and when we

2    should conduct such a full-blown evidentiary hearing with sworn

3    testimony in this court.

4         MR. GREEN:  Your Honor, there is a settlement

5    conference scheduled before Magistrate Pitman, I believe, on

6    November 21.  As a housekeeping matter, I was going to raise

7    anyway whether we should proceed with that in light of your

8    commentary.

9         THE COURT:  It makes sense.

10        MR. GREEN:  I think it does make sense.

11        THE COURT:  I certainly would propose taking up this

12   question at that conference and we will set a date after that

13   when you write to me either indicating we have a settlement,

14   here is our proposal and why it is fair and reasonable, we

15   don't have a settlement, we want to proceed with litigation, or

16   alternative proposals as to how to go about assessing whether

17   there is an enforceable settlement.

18        How does that sound?

19        MR. CHONG:  I think your plan sounds fair and

20   reasonable, your Honor.

21        THE COURT:  Ms. Schulman.

22        MR. SCHULMAN:  Yes.  That sounds good.

23        THE COURT:  Your conference is the 21st?

24        MR. SCHULMAN:  I think it's the 22nd, actually.

25        MR. GREEN:  I might be a little off because I don't

1   have my calendar.

2        MR. SCHULMAN:  It's Thanksgiving week.

3        THE COURT:  If it's Tuesday, the 22nd, given

4   Thanksgiving and the like, what I'd suggest is I hear from you,

5   you tell me, by December 2.  Is that enough time?

6        MR. SCHULMAN:  That sounds fine.

7        MR. CHONG:  I think that's fine, your Honor.

8        MR. GREEN:  Your Honor, that is fine.

9        The only other point I would raise is delaying the

10  conditional class cert. motion practice from going forward

11  while we sort these issues out and also there is a concern

12  about discovery because I believe all the parties have

13  outstanding demands.  But we didn't want to proceed while these

14  issues were out there.

15       THE COURT:  Ms. Schulman.

16       MR. SCHULMAN:  I would be ok with holding off until

17  the settlement conference.

18       THE COURT:  I appreciate that.

19       Why don't we pause the case management schedule and if

20  you don't get to settlement or resolution of the settlement

21  issue, it will resume following your settlement conference.

22       Here is what we will do.  If what you tell me by

23  December 2 is that we are proceeding to litigation, just

24  resubmit a case management plan with the dates suggested for

25  the pause time.

1             MR. SCHULMAN:  Ok.

2             THE COURT:  My read here is that going down the road

3    of assessing whether this agreement is enforceable or not is a

4    problematic one.  It will obviously be resource heavy and I

5    have concerns.  It's a rock I'd like to not look under, but

6    I'll do it if that's where we are.  And if that is where we

7    are, then everybody should just be real clearheaded about what

8    that means.

9             I hope that either everybody can cool down and a new

10   settlement that is fair and reasonable can be reached, or we

11   proceed to litigation.  I think those are the better options.

12   If we are at door No. C, that's what we will do.

13             Anything else, I can address at this time.

14             MR. SCHULMAN:  Not from plaintiffs, your Honor.

15             MR. CHONG:  Nothing, your Honor.

16             MR. GREEN:  No, your Honor.

17             THE COURT:  Thank you.  We are adjourned.

18                              o0o

19

20

21

22

23

24

25