UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
:
JULIO REDWOOD et al.,
:
               Plaintiffs,
:   16 Civ. 3502 (HBP)
:
   -against-
:   OPINION
:   AND ORDER
CASSWAY CONTRACTING CORP.,
:
et al.,
:
               Defendants.  :
------------------------------------X

       PITMAN, United States Magistrate Judge:

       This matter is before me on the parties' joint application to approve their settlement (Docket Item ("D.I.") 49). All parties have consented to my exercising plenary jurisdiction pursuant to 28 U.S.C. § 636(c).

       Plaintiffs allege that they were jointly employed by Cassway Contracting Corp. ("Cassway"), a construction company, and JS & JR Construction Corporation ("JS & JR"), a sub-contractor of Cassway's.[1] Plaintiffs bring this action under the

---

[1] According to plaintiffs, Cassway and JS & JR each controlled certain aspects of their employment such that both defendants exercised "formal control." For example, plaintiffs received their salary from JS & JR, but signed into job sites as Cassway employees using Cassway building ID cards. Plaintiffs also reported to Cassway and JS & JR foremen, depending on what duties they were performing. Both entities' foremen allegedly had the power to direct or fire any worker on the job site. See
                                                          (continued...)

Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §§ 201 et seq., and the New York Labor Law (the "NYLL"), and seek to recover unpaid overtime premium pay. Plaintiffs also assert claims based on the defendants' alleged failure to provide certain notices and statements as required by the NYLL. Plaintiffs commenced this action as a collective action, but reached a settlement before conditional certification.

Defendants deny plaintiffs' allegations. Cassway argues that plaintiffs were employees of JS & JR, not Cassway. Even if plaintiffs were its employees, Cassway argues that they were exempt from the overtime premium pay provisions of the FLSA and NYLL as executive, administrative, professional and/or highly compensated employees.[2] JS & JR argues that plaintiffs were not its "employees" within the meaning of the FLSA or the NYLL, and, thus, are not entitled to overtime premium pay from it. In addition, JS & JR maintains that it kept detailed logs that recorded plaintiffs' time worked on a daily and weekly basis, and records of wages paid. According to JS & JR, its records

---

[1](...continued)
generally Goldberg v. Whitaker House Co-op., Inc., 366 U.S. 28, 32 (1961) (setting forth the factors to be considered in determining whether a person is an "employee" within the meaning of the FLSA).

[2] Cassway also asserts a cross-claim against JS & JR, alleging breach of contract with respect to 17 construction agreements.

2

demonstrate that:  (1) plaintiffs were paid more than the minimum wage; (2) at least one plaintiff never worked over 40 hours in one week and (3) to the extent that either plaintiff ever worked over 40 hours in one week, they were compensated at 150% of their regular hourly rate.

I held a lengthy settlement conference on November 22, 2016 that was attended by the parties and their counsel.  After a protracted discussion of the strengths and weaknesses of the parties' respective positions, the parties agreed to resolve the dispute for a total settlement of $35,000.00 (Letter of Denise A. Schulman, Esq., to the undersigned, dated Jan. 6, 2017 (D.I. 49), Ex. 1).[3]  The agreement also provides that plaintiffs' counsel will receive $762.10 to reimburse their out-of-pocket expenses and $11,412.63 for attorneys' fees.  The amount claimed by each plaintiff[4] and the net amount that will be received by each after deduction of legal fees and costs are as follows:

---

[3] Under the terms of the settlement agreement, JS & JR will pay $30,000.00 of the total amount and Cassway will pay the remaining $5,000.00.

[4] The amount claimed by each plaintiff includes the allegedly unpaid overtime premium compensation, liquidated damages, and statutory damages for alleged violations of the NYLL.

3

| Plaintiff | Length of Employment | Amount Claimed | Net Settlement Amount |
|---|---|---|---|
| Julio Redwood | 125 weeks | $55,000.00 | $15,977.69 |
| Eduardo Redwood | 56 weeks | $23,346.67 | $6,847.58 |
| **Total** | **181 weeks** | **$78,346.67** | **$22,825.27** |

Court approval of an FLSA settlement is appropriate

> "when [the settlement] [is] reached as a result of contested litigation to resolve bona fide disputes." Johnson v. Brennan, No. 10 Civ. 4712, 2011 WL 4357376, at *12 (S.D.N.Y. Sept. 16, 2011). "If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement." Id. (citing Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1353 n. 8 (11th Cir. 1982)).

Agudelo v. E & D LLC, 12 Civ. 960 (HB), 2013 WL 1401887 at *1 (S.D.N.Y. Apr. 4, 2013) (Baer, D.J.) (alterations in original). "Generally, there is a strong presumption in favor of finding a settlement fair, [because] the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." Lliguichuzhca v. Cinema 60, LLC, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (Gorenstein, M.J.) (internal quotation marks omitted). In Wolinsky v. Scholastic Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012), the Honorable Jesse M. Furman, United States District Judge, identified five factors that are relevant to an assessment of fairness of an FLSA settlement:

> In determining whether [a] proposed [FLSA] settlement is fair and reasonable, a court should

4

>
> consider the totality of circumstances, including but not limited to the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

(internal quotation marks omitted). The settlement here satisfies these criteria.

First, plaintiffs' net settlement represents approximately 29.1% of their total alleged damages. Cassway argues that plaintiffs are not employees. JS & JR argues that its records show that at least one plaintiff never worked more than 40 hours in a week, and that plaintiffs received overtime premium pay when they were entitled to it. As discussed in more detail below, given the risks these issues present, plaintiffs' settlement amount is reasonable.

Second, the settlement will entirely avoid the expense and aggravation of litigation. Cassway disputes that it employed plaintiffs. JS & JR disputes the number of hours plaintiffs worked and claims to have detailed time and wage records that support this contention. Trial preparation would probably require additional depositions to explore this issue. The settlement avoids the necessity of conducting these depositions.

5

Third, the settlement will enable plaintiffs to avoid the risk of litigation. Plaintiffs will have to establish that Cassway exercised control over their employment in order for it to be held liable. In addition, JS & JR disputes the number of hours plaintiffs worked, and apparently kept records of plaintiffs' time worked and overtime wages paid. Given the documentary evidence and the fact that plaintiffs bear the burden of proof, it is uncertain whether, or how much, plaintiffs would recover at trial. See Bodon v. Domino's Pizza, LLC, No. 09-CV-2941 (SLT) 2015 WL 588656 at *6 (E.D.N.Y. Jan. 16, 2015) (Report & Recommendation) ("[T]he question [in assessing the fairness of a class action settlement] is not whether the settlement represents the highest recovery possible . . . but whether it represents a reasonable one in light of the uncertainties the class faces . . . ." (internal quotation marks omitted)), adopted sub nom. by, Bodon v. Domino's Pizza, Inc., 2015 WL 588680 (E.D.N.Y. Feb. 11, 2015); Massiah v. MetroPlus Health Plan, Inc., No. 11-cv-05669 (BMC), 2012 WL 5874655 at *5 (E.D.N.Y. Nov. 20, 2012) ("[W]hen a settlement assures immediate payment of substantial amounts to class members, even if it means sacrificing speculative payment of a hypothetically larger amount years down the road, settlement is reasonable . . . ." (internal quotation marks omitted)).

Fourth, because I presided over the settlement conference that immediately preceded plaintiffs' acceptance of the settlement, I know that the settlement is the product of arm's-length bargaining between experienced counsel. Both counsel represented their clients zealously at the settlement conference.

Fifth, there are no factors here that suggest the existence of fraud. The material terms of the settlement were reached at the settlement conference. This fact further negates the possibility of fraud or collusion.

The settlement agreement allocates approximately %70 of the net settlement amount to plaintiff Julio Redwood and the remaining 30% to plaintiff Eduardo Redwood. According to information provided by both parties, plaintiff Julio Redwood was employed by defendants for 126 weeks. Eduardo Redwood was employed for only 58 weeks. Furthermore, Julio Redwood, a sheetrock foreman, was paid at an hourly rate approximately five dollars higher than Eduardo Redwood, a laborer. In light of number of hours worked by and the hourly rates paid to each plaintiff, the allocation of the settlement fund is fair and reasonable. Cf. Fu v. Mee May Corp., 15 Civ. 4549 (HBP), 2017 WL

7

2172910 at \*1-\*2 (S.D.N.Y. Mar. 31, 2017) (Pitman, M.J.) (rejecting settlement agreement where no explanation provided for allocation of settlement proceeds).

The settlement agreement also contains a release. It provides that plaintiffs release defendants "from any and all wage and hour and/or notice claims that were and/or could have been brought in this Action." Such a release, although unlimited in duration, is permissible because it is limited to claims relating to wage and hour issues. See e.g., Yunda v. SAFI-G, Inc., 15 Civ. 8861 (HBP), 2017 WL 1608898 at \*3 (S.D.N.Y. April 28, 2017) (Pitman, M.J.); Santos v. Yellowstone Props., Inc., 15 Civ. 3986 (PAE), 2016 WL 2757427 at \*1, \*3 (S.D.N.Y. May 10, 2016) (Engelmayer, D.J.) (approving release that included both known and unknown claims but was limited to wage and hour claims); Hyun v. Ippudo USA Holdings, 14 Civ. 8706 (AJN), 2016 WL 1222347 at \*3-\*4 (S.D.N.Y. Mar. 24, 2016) (Nathan, D.J.) (approving release that included both known and unknown claims and claims through the date of the settlement that was limited to wage and hour issues; rejecting other release that included both known and unknown claims and claims through the date of the settlement that was not limited to wage and hour issues); cf. Alvarez v. Michael Anthony George Constr. Corp., No. 11 CV 1012 (DRH)(AKT), 2015 WL 10353124 at \*1 (E.D.N.Y. Aug. 27, 2015)

(rejecting release of all claims "whether known or unknown, arising up to and as of the date of the execution of this Agreement" because it included "the release of claims unrelated to wage and hour issues" (internal quotation marks omitted)).

Finally, the settlement agreement provides that 33.3% of the settlement fund, excluding plaintiffs' counsel's out-of-pocket expenses, will be paid to plaintiffs' counsel as contingency fees. Contingency fees of one-third in FLSA cases are routinely approved in this Circuit. Santos v. EL Tepeyac Butcher Shop Inc., 15 Civ. 814 (RA), 2015 WL 9077172 at *3 (S.D.N.Y. Dec. 15, 2015) (Abrams, D.J.) ("[C]ourts in this District have declined to award more than one third of the net settlement amount as attorney's fees except in extraordinary circumstances."), citing Zhang v. Lin Kumo Japanese Rest. Inc., 13 Civ. 6667 (PAE), 2015 WL 5122530 at *4 (S.D.N.Y. Aug. 31, 2015) (Engelmayer, D.J.) and Thornhill v. CVS Pharm., Inc., 13 Civ. 507 (JMF), 2014 WL 1100135 at *3 (S.D.N.Y. Mar. 20, 2014) (Furman, D.J.); Rangel v. 639 Grand St. Meat & Produce Corp., No. 13 CV 3234 (LB), 2013 WL 5308277 at *1 (E.D.N.Y. Sep. 19, 2013) (approving attorneys' fees of one-third of FLSA settlement amount, plus costs, pursuant to plaintiff's retainer agreement, and noting that such a fee arrangement "is routinely approved by courts in this Circuit"); Febus v. Guardian First Funding Grp.,

LLC, 870 F. Supp. 2d 337, 340 (S.D.N.Y. 2012) (Stein, D.J.) ("[A] fee that is one-third of the fund is typical" in FLSA cases); accord Calle v. Elite Specialty Coatings Plus, Inc., No. 13-CV-6126 (NGG)(VMS), 2014 WL 6621081 at *3 (E.D.N.Y. Nov. 21, 2014); Palacio v. E*TRADE Fin. Corp., 10 Civ. 4030 (LAP)(DCF), 2012 WL 2384419 at *6-*7 (S.D.N.Y. June 22, 2012) (Freeman, M.J.).

Accordingly, for all the foregoing reasons, I approve the settlement in this matter. In light of the settlement, the action is dismissed with prejudice and without costs. The Clerk is respectfully requested to mark this matter closed

Dated: New York, New York
October 18, 2017

SO ORDERED

HENRY PITMAN
United States Magistrate Judge

Copies transmitted to:

All Counsel